[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and defendant were married on September 9, 1989 in Bloomfield, Connecticut, after having been introduced in June of 1989. They both have been Connecticut residents for more than one year. One child, Brittany, was born to the defendant wife, during the marriage. She is now two and one-half, having been born on August 5, 1990.
At the commencement of trial the parties stipulated to joint custody of Brittany with primary residence with the defendant mother, and reasonable, liberal, and flexible visitation to the plaintiff father. At the close of evidence on the first day of trial, the court was informed that this young child had in fact been referred to Newington Children's Hospital for a psychiatric evaluation. While the court indicated that it would currently ratify the parties agreement for joint custody, it would require a report of Newington's findings to determine if further intervention should be required by way of follow-up for this young couple and their child. At this writing, it appears from short calendar claims that the parties are encountering problems with visitation which will be addressed following the CT Page 1500 publication of this decision.
The parties further stipulated to the value of their only asset, a home they constructed at 49 Bunnell Street in Colebrook, Connecticut. The stipulation projected a sales price of $275,000.00 for that property. The parties agreed that the remaining debt to his parents as of August 31, 1992 was $144,740.59. The defendant did not concede a loan, but rather reserved the right to put on evidence that the debt was in fact a gift.
The relationship between the parties was short-lived, but produced their daughter, and a home which has turned into an extraordinarily bad investment. The parties separated in September of 1991, shortly after the defendant husband brought the writ. His claim as to the cause of the breakdown was that there was no physical or emotional care of him by his wife, that she put him down over his inability to earn at a high level, and that they had great financial stress. The plaintiff is twenty-seven (27), and a high school graduate. He is trained and conducts his own business as a dog trainer in other peoples' homes.
The defendant wife is thirty-one (31) years of age, a graduate of Mattatuck Community College with an associate's degree as a paralegal, which is how she is currently employed. She claimed that the marriage disintegrated after the birth of the child, and because of financial stress brought on by plaintiff's immature insistence on building a home on 9.5 acres. She further claimed that he spent nights away from the home after the birth of the child. and ultimately was the initiator of the subject action.
It is clear from the evidence that this was an ill-fated union, not well thought out, and complicated by the rapid birth of their child. These two young people barely had an opportunity to get to know one another before their child was born. They never had a chance to establish their relationship before they brought another person into their family. The marriage has broken down irretrievably and a decree dissolving the marriage shall enter. Clearly, the plaintiff was not ready to assume those responsibilities at that time. He has demonstrated that he is disinclined to assume them now, by earning thirty-eight thousand ($38,000.00) dollars in 1989, and only fifteen thousand ($15,000.00) in 1990.
Meanwhile, the parties disagree as to who is responsible for the disaster which is the acquisition and building of a 2700 square foot contemporary home on 9.5 acres in Colebrook, which home is presently empty. (Pl. Exh. 5). The parties borrowed $150,000.00 from plaintiff's parents to build a home. They planned to refinance after completion and pay back Mr. and Mrs. Antuna that start-up money. The $150,000.00 received from the elder CT Page 1501 Antunas was clearly a loan. Their testimony was credible. It also was rather sad. The loss to them of any of these monies was stirred up for them issues in their own marriage. What had been a rather amicable long-term separation, was reduced to anger and sincere insecurity. The claim that Mr. Antuna, Senior made $450,000 per year was not proved. He admitted lying on his application for financing with the Money Store (Lee Servicing Corp. ) so as to secure a new mortgage on the home in Cheshire which had been their home and which was currently occupied by Mrs. Antuna. Clearly, advancing monies to their youngest son and his new bride who was recently pregnant was inadvisable. The parents of the plaintiff were, however, attempting to help this young couple, and Mr. Antuna Senior testified that his son had made $85,000.00 per year and he felt he could afford to pay this back. Both parents testified that they were assured by the defendant that she would continue to work to help pay for the home.
The house was started and plaintiff and defendant secured a first mortgage on the Colebrook house from Torrington Savings in the amount of $150,000. They did not repay the plaintiff's parents, but rather continued to expend those sums on construction. There was virtually no complaint or claim by Mr. and Mrs. Antuna that this was done without their knowledge. While they may not have agreed, the house was so far out of control, there was little else to be done.
No one could testify that one of the parties exclusively conceived of this grandiose construction project. Neither party accepted responsibility however. The plaintiff has claimed that the defendant should share in repaying his parents for the original loan. Additional periodic loans existed, but they appear to have been made to the plaintiff. What the court must determine is the extent, if any, of contribution to what will be remaining due and owing to plaintiff's parents after the sale of the home based on the stipulated value. The debt which remains will approximate eighty-seven thousand ($87,000.00) dollars. (Pl. Exh. 1)
The court must evaluate the testimony of the parties and compare and weigh that in conjunction with the statutory criteria enunciated in Conn. Gen. Stat. 46b-81, et seq. The court finds that the plaintiff is not working to his earning capacity, which the court finds to be $35,000.00 per year. (Pl. Exh. 10 — 1989 IRS Form 1040). The court finds credible the defendant's testimony that the plaintiff insisted upon the parties not paying rent for their housing, and finds that his immaturity was the primary cause for the breakdown of the marriage. The court finds also that he is younger than his wife, has only the current job rather than her two jobs as custodial parent and paralegal, and as a result, he is in a better position to acquire assets in the future. CT Page 1502
The court, despite the fact that defendant has no assets, and has a limited ability to acquire assets, finds that she is fully employed and has a history of being able to be employed. The court awards no periodic alimony nor will the court award lump sum alimony. Rather, the court feels that the plaintiff, who requested the divorce under the circumstances should pay any debt to his parents and hold the defendant harmless therefrom. The net effect of the court's order is to require him to pay the $33,000.00 which he proposed she pay after the sale of the house. The court will order that the defendant convey all her right, title and interest to the plaintiff. He shall have the right to retain the property or to dispose of it as he sees fit. He shall be responsible for the mortgages and other encumbrances on the property as well as taxes, insurance and costs incident to future conveyance and hold her harmless therefrom.
After such a short courtship, and recent vintage of this marriage, it is clear to the court that this loan was made on behalf of the plaintiff. Furthermore, since the parties have agreed that their child will reside primarily with her mother, the plaintiff will have more free time to develop and expand his business to meet these financial obligations.
The court has found the earning capacity of the plaintiff and orders that he pay child support in the amount of one hundred ten ($110.00) dollars per week. This amount deviates slightly from the guidelines and is less, but it takes into account the obligation enunciated above.
The parties shall cover the minor child on medical insurance which is made available through their employment. If it is not available through employment, the parties shall share the cost of same, and shall share the cost of any unreimbursed health-related expenses for the minor child.
The parties shall secure a life insurance policy in the face amount of fifty thousand ($50,000.00) dollars and shall name the child as irrevocable beneficiary until she reaches the age of eighteen.
The plaintiff may retain as trustee for the minor child the wedding and engagement ring he purchased for the defendant.
The defendant shall have the child as an exemption for federal and state tax purposes until the Colebrook property is sold. Thereafter the parties shall alternate the exemption.
The parties shall be solely responsible for their respective attorneys' fees.
Judgment shall enter in accordance with this opinion. CT Page 1503
DRANGINIS, J.